Amanda Linn Cashion, the executrix of the estate of Dot C. Smith, deceased, appeals from a summary judgment in favor of Mary Dixon Torbert, the conservator of Smith's estate before Smith died. This appeal arises out of the following fairly convoluted procedural history:
On July 12, 2000, the Montgomery County Department of Human Resources petitioned for protective placement for Dot C. Smith, an elderly woman with multiple physical and mental disabilities. The matter was assigned to Montgomery Circuit Judge Tracy McCooey, who entered an order filed on August 31, 2000, directing that Smith "remain in her current nursing home placement" and appointing Mary Dixon Torbert as conservator of Smith's estate. On November 30, 2000, Smith died.
Kathy Lou Tipler of Rossville, Tennessee, a relative of Smith's, filed a petition to probate Smith's will with the judge of probate of Montgomery County on January 23, 2001. James W. Cameron cosigned the petition as Tipler's attorney. The probate judge, the Honorable Reese McKinney, granted letters testamentary to Tipler on January 23, 2001.
On February 7, 2001, Torbert filed in the Montgomery Circuit Court a petition for final settlement as conservator; her petition was accompanied by 36 pages of supporting exhibits. Also on that date, Torbert filed her "Application for Attorney's Fees" accompanied by a copy of her five-page itemized statement of services *Page 410 
rendered. Torbert certified that copies of both filings were hand-delivered to Cameron on February 6, 2001. On February 8, Judge McCooey entered an order granting the petition for final settlement, and, among other things, discharging Torbert and the surety on her conservator's bond "from all further liability." On that same day, Judge McCooey entered a separate order awarding Torbert attorney fees in the amount of $15,298.75. Copies of both orders were served on Cameron.
The February 8 order of final settlement contained the statement that Torbert had delivered to the executrix named in Smith's will the "Estate, including all property and funds . . . by delivery [of] same to Ms. Tipler's attorney, James W. Cameron." On February 13, 2001, Cameron, in his capacity "as Counsel for Kathy Lou Tipler, executrix of the estate of Dot C. Smith," acknowledged receipt of various items from Torbert, consisting of various keys, three rings, and three boxes containing, but not limited to, "pleadings, correspondence, bills, checkbooks[,] bank information [and] personal papers belonging to the Estate." The date of Cameron's receipt of those items, whether on February 13, or on or before February 8, is thus uncertain. When Tipler subsequently was unable to continue as executrix, Cashion, a niece of Smith's and a resident of Memphis, Tennessee, was appointed successor executrix on April 12, 2001.
On October 10, 2001, Cashion signed under oath her "Report of Insolvency," which declared that the estate had assets of only $18,511.46 and claims against it totaling $31,064.13, not including the expenses and fees of Tipler and Cashion, which totaled $5,800. (The date this report was filed in the probate court is not ascertainable from the record.)
Judge McKinney conducted a hearing on the insolvency report on January 9, 2002, at which, according to a later order, he "heard testimony and evidence on said report and [the supporting] statements" and declared the estate insolvent. On January 15, 2002, Cashion served a "Brief in Support of Report of Insolvency" (the filing date of the brief is not established by the record) in which, among other things, she made detailed assertions and referenced numerous attached exhibits, alleging that Torbert had exaggerated the net worth of the conservatorship estate in her final accounting to Judge McCooey and had misrepresented and omitted certain assets and liabilities.
On January 18, 2002, Judge McKinney issued a "Decree of Insolvency," declaring the estate insolvent and ordering "that Amanda Linn Cashion, as executrix, appear and make a statement of her administration for final settlement of said estate on the 25th day of February, 2002, at 1:30 o'clock p.m." The hearing was held as scheduled on February 25, and Judge McKinney heard Cashion's statement of her administration of the estate "and any objections to same."
On March 5, Judge McKinney issued his "Order on Final Settlement," in which he found, "upon consideration of all the evidence, testimony, and briefs," that the available assets of the estate amounted to $18,511.46, and that they should be disbursed to satisfy certain claims and expenses of the estate, including Torbert's claim, reduced from the $15,298.75 awarded by Judge McCooey to $15,286.11. Further, Torbert was ordered to pay out of that amount two other claims, totaling $2,548.79. Judge McKinney concluded his order by stating that upon the ordered disbursements being made, the estate would be "fully and completely settled."
On April 9, 2002, Cashion signed a notice of appeal with respect to Judge McKinney's order on final settlement, her *Page 411 
"Request for Findings of Fact and Conclusion of Law" directed to him, and an "Action to Set Aside Judgment Procured Through Fraud upon the Court and Complaint for Breach of Fiduciary Duty." The action to set aside Judge McCooey's order and her complaint alleging breach of fiduciary duty were filed in the Montgomery Circuit Court on April 11, 2002, but the filing dates of the notice of appeal and the request are not documented in the record. The matter was assigned to Judge Eugene Reese. On May 20, 2002, Torbert filed a motion to dismiss Cashion's proceedings in the circuit court. On July 15, Cashion filed with Judge Reese a motion to consolidate, noting that her appeal to the Montgomery Circuit Court of Judge McKinney's order on final settlement had been assigned to Judge William A. Shashy, and stating that the appeal and the case pending before Judge Reese involved common questions of law and fact. On July 16, Cashion certified that she had served Joe Espy and Mark Bain, attorneys for Torbert, with her "Response in Opposition to Defendant's Motion to Dismiss" and her "Memorandum of Law in Opposition to Defendant's Motion to Dismiss." (For some reason, those documents were not logged in by the circuit clerk as having been filed until August 21.) On July 23, Torbert filed her reply to Cashion's opposition to her motion to dismiss. Two of the principal legal issues argued by the parties were the defenses asserted by Torbert in her motion to dismiss of res judicata and collateral estoppel.
On July 24, 2002, Judge Reese conducted a hearing on all pending motions; Ms. Julie C. Bartholomew, Cashion's attorney, and Mr. Espy attended the hearing. At that hearing, Espy advised the court that he had filed and faxed to Ms. Bartholomew a brief the day before the hearing, which Ms. Bartholomew explained she had not received because she had been in transit from Tennessee to Montgomery. She stated that she would like two weeks to review the brief and to respond, and Mr. Espy and Judge Reese ultimately agreed to her request. The parties stipulated that the motion to dismiss would be treated as a motion for a summary judgment, because of the various exhibits attached to it. See Rule 12(b), Ala. R. Civ. P.
On August 6, 2002, Cashion executed an affidavit, authenticating a number of exhibits, either already filed with the court or attached to the affidavit. The date of filing of that affidavit is not reflected in the record. On August 20, Cashion filed her opposition to the motion for a summary judgment. On August 21, Torbert filed a reply to Cashion's opposition; Cashion filed an amended statement in opposition on August 23, 2002. On October 10, 2002, Judge Reese denied the motion to consolidate the cases and granted Torbert's motion for a summary judgment on the grounds of res judicata and collateral estoppel. Cashion appealed that order on November 19, 2002.[1]
As noted, following Smith's death, Torbert, as conservator, filed a petition for final settlement, and an application for attorney fees, and hand-delivered copies of both to Cameron, as the attorney for the executrix of Smith's estate. Section 26-5-7, Ala. Code 1975, mandates that a final settlement take place following the death of a conservator's ward. Section 26-2A-142, Ala. Code 1975, provides that the conservator and any attorney whose services were beneficial to the ward are to be paid "reasonable compensation from the estate." *Page 412 
Judge McCooey's February 8, 2001, orders addressed the petition and application for attorney fees, respectively. With respect to the petition for final settlement, Judge McCooey granted the petition and "accepted and approved" the proposed settlement of the conservatorship; "discharged and relieved [Torbert] of any and all of her duties as conservator . . . without any other or further accounting of said conservatorship to the executrix of the estate of Dot C. Smith, namely, Kathy Lou Tipler"; declared that Torbert had delivered to Cameron, as Tipler's attorney, "all property and funds," that the "Executrix has acknowledged payment in full of all funds and property due her by said Conservator," and that the surety on Torbert's bond as conservator had consented to Torbert's discharge as conservator; discharged both Torbert and the surety from all further liability; and noted that a copy of the order was to be transmitted to Cameron, as attorney for Tipler, as executrix. With respect to the separate application for attorney fees, Judge McCooey awarded "attorney's fees in the total amount of $15,298.75." A copy of that order was likewise transmitted to Cameron. There have been no further proceedings in that particular case, docketed in the Montgomery Circuit Court as case number CV-2000-1912.
As noted, in the probate court proceeding, Cashion was appointed as successor executrix on April 12, 2001. In response to the "Report of Insolvency" filed by Cashion, Judge McKinney conducted a hearing and entered a "Decree of Insolvency" on January 18, 2002, directing Cashion to appear and make a statement of her administration for final settlement of Smith's estate on February 25. Notice of that hearing was to be given to all interested persons by newspaper publication and posting, along with notice by mail to all creditors of the estate. In her brief in support of her report of insolvency, Cashion devoted several pages to criticizing Torbert's handling of the conservatorship estate, asserting, with supporting exhibits attached, that Torbert had exaggerated the net worth of the conservatorship estate through various misstatements and omissions, but concluding with this statement: "Perhaps at some later date, a determination may be made as to whether Ms. Torbert's $15,298.75 fee is excessive, and possibly even an inquiry into the quality of her services would be appropriate." On March 5, 2002, Judge McKinney entered his order on final settlement, in which he concluded that $18,511.46 was available for the payment of expenses, to be disbursed as follows:
 "Hamilton Funeral Home $ 1,010.85 "Expenses incurred by Executrix $ 800.00 "Expenses incurred by Successor/"Executrix $ 1,000.00 "Probate court costs $ 414.50 "Mary Dixon Torbert $15,286.11 "([Judge McCooey's] order awarding conservator $15,298.75)"
With respect to the disbursement to Torbert, however, Judge McKinney ordered that out of it she satisfy two claims against the estate: Treasure Antiques in the amount of $2,070, and Eastside Realty, in the amount of $478.79. Judge McKinney ordered that upon those disbursements the estate would be deemed "fully and completely settled" and Cashion fully released and discharged from any and all further liability as executrix.
As noted, Cashion then filed her notice of appeal from Judge McKinney's order of March 5, and filed her action and complaint in the circuit court. She alleged in it that Torbert had committed "fraud on the court" by exaggerating the condition and value of the conservatorship estate in her submissions to Judge McCooey, and specified the reason for that fraud as follows: "Defendant perpetrated a fraud upon the Court to procure the Court's approval of her Application for Attorney's *Page 413 
Fees." The relief Cashion sought with respect to the alleged fraud on the court was to set aside "the Court's Order awarding Defendant $15,298.75 in attorney's fees." That specific, and limited, remedy was reiterated in the concluding prayer for relief, which requested that "a judgment be entered setting aside the February 8, 2001, award of $15,298.75 attorney's fee for services by Conservator for Decedent's Estate." Cashion did not challenge Judge McCooey's separate order of final settlement, and no request was made to set that order aside.
In her initial brief filed with this Court, Cashion reiterates that her action to set aside seeks to set aside only Judge McCooey's February 8, 2001, order "approving Defendant's request for fees in the amount of $15,298.75 for services Defendant claimed she rendered as the decedent's court-appointed conservator." She explains that in her complaint alleging breach of fiduciary duty she "alleges that [Torbert] was negligent in carrying out her duties as conservator and seeks recovery of money damages." (Cashion's initial brief, pp. 1-2.)
In her statement filed in opposition to Torbert's motion for a summary judgment, Cashion acknowledged that Torbert asserted res judicata as a defense, but she contended that res judicata was not a valid defense because (1) it "cannot be applied against the party who did not have a full and fair opportunity to litigate the issue in question in a previous suit" (and Cashion argues, because she was not a party to the conservatorship proceeding, she had been unaware of either Torbert's fraud upon the court or her breach of fiduciary duty); (2) Judge McKinney's order on final settlement was not final because it had been appealed to the circuit court and, after affirmance there, was on appeal to this Court; and (3) that "res judicata cannot be asserted as a defense against an action to set aside a judgment procured through fraud upon the court." Those were the only challenges by Cashion to the application of the doctrine of res judicata that were before Judge Reese when he entered the summary judgment for Torbert.
On appeal to this Court, Cashion presents several other reasons why the defense of res judicata should be deemed inapplicable to these facts but, because Judge Reese was never alerted to any of them, we will not consider them. "`Our review is limited to the issues that were before the trial court — an issue raised on appeal must have first been presented to and ruled on by the trial court.' Norman v. Bozeman, 605 So.2d 1210, 1214 (Ala. 1992)." Ex parte Weaver, 871 So.2d 820, 823 (Ala. 2003). See also Yellow Dog Dev., LLC v. Bibb County, 871 So.2d 39 (Ala. 2003), and Rampey v. Novartis Consumer Health, Inc.,867 So.2d 1079 (Ala. 2003). "Although the appellate courts will not reverse a trial court on any ground not presented to the trial court,Norman v. Bozeman, 605 So.2d 1210 (Ala. 1992), the appellate courts will affirm the trial court if its ruling is correct onany valid ground or rationale, even one rejected or not considered by the trial court, McKenzie Methane Corp. v. M-WDrilling, Inc., 653 So.2d 982 (Ala. 1995), and Smith v. EquifaxServices, Inc., 537 So.2d 463 (Ala. 1988)." Rogers Found.Repair, Inc. v. Powell, 748 So.2d 869, 872-73 (Ala. 1999).
Independent of the argument Torbert makes with respect to the res judicata effect of Judge McCooey's orders in the conservatorship case, we conclude that Judge Reese was authorized to accord res judicata effect to Judge McKinney's order on final settlement in the probate proceeding, as affirmed by Judge Shashy. Both Cashion and Torbert, in their respective capacities as executor and conservator, *Page 414 
were parties to that action (see Broughton v. Merchants Nat'lBank of Mobile, 476 So.2d 97, 106 (Ala. 1985)), and Cashion raised, or could have raised, all of the issues she now seeks to raise in the proceedings before Judge Reese. See Broughton,476 So.2d at 102-03.[2]
Cashion argues that "Judge McKinney's premature entry of the Order on Final Settlement precluded [her] from filing an objection to [Torbert's] claim for Conservator's fees." (Cashion's initial brief, p. 44.) As noted, however, on January 18, 2002, Judge McKinney ordered Cashion to "appear and make a statement of her administration for final settlement of said estate" on February 25, and she did so without protest as to the timing, filing in the process her statement for final settlement, with supporting documentation. Judge McKinney examined her statement and attachments at the hearing conducted on February 25, and he entered his order on final settlement on March 5, 2002. At no time up to that point had Cashion ever objected to a final settlement.
Thus, because Cashion could have asserted in the probate court the criticisms of Torbert's conduct as conservator and her alleged "fraud on the court," which Cashion included in her brief filed in support of her report of insolvency, and because she participated without protest in duly noticed proceedings looking to the entry of a final settlement, we cannot conclude that she was deprived of the opportunity fully to present her claims to the probate court. As noted, under the rule set out inBroughton, res judicata applies not only to those claims that Cashion did assert in the probate court proceedings, but also to those claims that she could have asserted there.[3]
Although Cashion acknowledges that Judge McKinney conducted two hearings, and she acknowledges that transcripts of those hearings would have been available to her, she does not include in the record a transcript of either.
With regard to her argument to Judge Reese, repeated on appeal, that Judge McKinney's order on final settlement, affirmed by Judge Shashy, was not final for purposes of res judicata because an appeal of Judge Shashy's order was pending, we conclude that that is not the law of Alabama. Rather, we confirm as the law of this state the principle stated in Alabama Power Co. v.Thompson, 250 Ala. 7, 12, 32 So.2d 795, 800 (Ala. 1947):
 "In this jurisdiction a judgment will operate as res judicata or as estoppel notwithstanding an appeal when the appellate court action is based on a review *Page 415 
of the record made below. Corinth Bank Trust Co. v. Lawler, 218 Ala. 83, 117 So. 620 [(1928)]; Collier v. Alexander, 142 Ala. 422, 38 So. 244
[(1905)]; Viberg v. State, 138 Ala. 100, 35 So. 53, 100 Am. St. Rep. 22 [(1903)]."
Cashion takes note of Thompson in both her initial brief and her reply brief, but her only challenge to its applicability is in the form of an excerpt from it, which she quotes incompletely as follows:
 "[W]hile the appeal is pending in the circuit court from an order . . . made in the probate court, such order is not such a final adjudication as it is conclusive of the rights of the parties . . . in other actions . . . it may not be pleaded as res judicata."
250 Ala. at 14, 32 So.2d at 801. The first ellipse in this truncated quote distorts the meaning of the statement; in full the sentence reads:
 "We hold that while the appeal is pending in the circuit court from an order of condemnation made in the probate court, such order is not such a final adjudication as is conclusive of the rights of the parties. . . ."
250 Ala. at 14, 32 So.2d at 801. The distinction is that this Court declared, in the excerpt quoted earlier from Thompson, that a judgment will operate as res judicata, notwithstanding that it is on appeal "when the appellate court action is basedon a review of the record made below," 250 Ala. at 12,32 So.2d at 800 (emphasis supplied). In an appeal to the circuit court of the type of probate court order involved in Thompson, there would be no appellate review; rather, the matter would be "triable de novo." Thompson, 250 Ala. at 12, 32 So.2d at 800. In contrast, in the present case, the appeal of Judge McKinney's order to the circuit court pursuant to § 12-22-20, Ala. Code 1975, did not result in a trial de novo. "[S]ection [12-22-20] does not allow for a trial de novo in the circuit court; rather, the circuit court acts in an appellate capacity and may not substitute its judgment for that of the probate court." Sandersv. Brooks, 611 So.2d 336, 337 (Ala. 1992), quoted in Womack v.Estate of Womack, 826 So.2d 138, 141 (Ala. 2002).
Thus, under Thompson, Judge McKinney's order operated as res judicata, notwithstanding that it was appealed to the circuit court, and notwithstanding a further appeal after Judge Shashy affirmed Judge McKinney's order. Cashion does not suggest in her submissions and arguments to Judge Reese and this Court that she has filed a supersedeas bond in connection with her appeal of Judge Shashy's order or that she has otherwise obtained a stay of it. Accordingly, Judge Reese could consider it as a final judgment with res judicata effect.
In support of her contention that the doctrine of res judicata cannot be asserted against an action to set aside a judgment procured through fraud upon the court, Cashion cites onlyStewart v. Stewart, 392 So.2d 1194 (Ala.Civ.App. 1980). Regardless of any applicability that case might have to Judge McCooey's order granting Torbert, as conservator, the attorney fees she requested, it has no application to the res judicata effect of Judge McKinney's order on final settlement. Stewart
involved an attempt by a man determined in a paternity action to be the father of a child to set aside that adjudication on the basis that the mother had committed fraud upon the court. The mother argued in opposition that the paternity action had res judicata effect on the plaintiff's action to have it set aside. Distinguishing the present proceedings is the fact that Cashion is attempting to set aside only Judge McCooey's order awarding Torbert attorney fees; Cashion makes no attempt to set *Page 416 
aside Judge McCooey's order of final settlement of the conservatorship estate, or Judge McKinney's order on final settlement. Thus, the statement in Stewart, quoted by Cashion in her brief, that "res judicata may not be utilized to sustain certain types of fraud," has no bearing on the res judicata effect to be accorded the final settlement order of Judge McCooey and the final settlement order of Judge McKinney.
Cashion also argues in her initial brief to this Court that summary judgment was inappropriate as to her claim alleging breach of fiduciary duty. This argument was never presented to Judge Reese. Although a summary judgment is rarely appropriate in a negligence action, this principal has no bearing on whether a particular claim is barred by the doctrine of res judicata.
In her reply brief, Cashion chides Torbert for failing to "point to any portion of the probate court hearing transcript" to show that Cashion raised the issue of Torbert's misconduct and negligence before the probate court. Cashion asserted before Judge Reese, but without any independent proof or corroboration, that the issues before Judge Reese had not been litigated in the probate court proceeding. Cashion argues to this Court that "[t]he record contains nothing which substantiates [Torbert's] claim that the issues of [Torbert's] misconduct and fraud were previously decided by Probate Judge McKinney." (Cashion's reply brief, p. 16.) We do know, however, that Judge McKinney conducted a hearing on February 25, 2002, for the purpose of making a "final settlement of [the] insolvent Estate and [hearing] any objections to same." Judge McKinney's order on final settlement stated that he had considered "all the evidence, testimony, and briefs" in reaching his conclusion that Torbert was entitled to a disbursement of $15,286.11, out of which she was to remit to other claimants a total of $2,548.79. Finally, Judge McKinney declared that, upon disbursement of the funds as ordered, the estate would be "fully and completely settled." As previously explained, that order by Judge McKinney is entitled to recognition and effect as a final judgment, for res judicata purposes.
Cashion argues that because § 43-2-747, Ala. Code 1975, gave her, as the executrix of Smith's estate, six months from the declaration of insolvency to object to claims, Judge McKinney's order on final settlement, which she states was "inexplicably entered," cut off her time for filing such objections. (Cashion's initial brief, p. 44 n. 58.) However, as noted, Judge McKinney advised all parties on January 18, 2002, that he would conduct a hearing on February 25, 2002, for the purpose of settling the insolvent estate. Cashion never objected to the matter proceeding to that final stage, but rather filed her statement of her administration of the estate, accompanied by supporting statements.
Judge McKinney conducted a hearing on February 25, at which he received "evidence [and] testimony." He entered his order on final settlement eight days later. The record does not reflect that Cashion ever objected or protested in any way to a final settlement being entered; Cashion does not suggest that she did so. Thus, we find nothing "inexplicable" about the fact that Judge McKinney proceeded to enter the order on final settlement, and we do not deem his order to have improperly "cut off" Cashion's opportunity to object to Torbert's claim. Cashion would certainly have understood that a final settlement of the insolvent estate would necessarily cut off her opportunity to question any of the claims filed in that probate court proceeding. Thus, we reject Cashion's argument in her initial brief to this Court that Judge *Page 417 
McKinney's "premature entry of a Final Order of Settlement improperly denied [Cashion] the opportunity to object to [Torbert's] claim and to litigate the issues of [Torbert's] fraud upon the court and breach of fiduciary duty before Judge McKinney." (Cashion's initial brief, p. 46.)
In her reply brief, Cashion argues, somewhat inconsistently, that she could not have presented before Judge McKinney any of the claims rejected by Judge Reese because, under OuchitaNational Bank v. Fulton, 195 Ala. 34, 70 So. 722, 723 (1916), Torbert's attorney-fee award was "uncontestable" by virtue of the effect of § 43-2-813, Ala. Code 1975. This argument, presented for the first time in Cashion's reply brief, is not eligible for our consideration. Weaver, Yellow Dog Development, and Rampey, supra. Moreover, § 43-2-813 would have no application to Torbert's claim. Specifically, that statute provides that "[a]fter judgment . . . has been rendered in any court against an executor or administrator for any debt, damages or costs, if the estate is subsequently declared insolvent," the judgment in question will be enforceable for payment in the probate court only "as other claims against insolvent estates." When Judge McKinney entered his order on final settlement, there had been no judgment rendered against the executor of the estate for any debt, damages, or costs. Rather, Judge McCooey had simply awarded Torbert attorney fees in the conservatorship proceeding. Pursuant to § 43-2-747, Ala. Code 1975, Cashion could have objected to the allowance of Torbert's claim, after which Judge McKinney would have been obliged "to cause an issue to be made up" between Torbert, as claimant, and Cashion, as objector, in which
 "the correctness of such claim must be tried as in a civil action, if required; and, if it is found for the claimant to the whole amount thereof, the same must be allowed and such claimant recover the costs of the trial of such issue; but, if against the claimant, the claim must be rejected, and the party contesting recovers the cost of the trial of such issue."
§ 43-2-747, Ala. Code 1975. An objection could have been made and litigated to a final determination as to "the merits or validity" of any particular claim. Christopher v. Stewart, 133 Ala. 348,32 So. 11 (1902).
Broughton, supra, is instructive in this regard, and as to the other res judicata issues presented. In that case Dorothy Carter Broughton entered into a trust agreement with Merchants National Bank of Mobile, pursuant to which Merchants was to manage the trust for her benefit during her lifetime and to pay over any remaining trust property to her estate at her death. Dorothy's will named Merchants as the executor of her estate. After her death, Merchants probated her will and subsequently petitioned for a final settlement of the estate. At the hearing on that petition, Elliott Broughton, one of three heirs of the estate, "submitted a memorandum brief outlining his objections to the settlement of the estate." 476 So.2d at 99. Among his objections was an allegation that Merchants had mismanaged and misadministered the trust. The only relief Elliott requested, however, was that the probate court order an independent audit "so that the true facts of the management of this trust . . . can be made known to the court." 476 So.2d at 99. Subsequently, the probate court issued its judgment on final settlement, finding that Merchants had properly administered the testamentary estate and releasing it from any further duty or liability. "Rather than appealing this order of the probate court, Broughton filed a new complaint in the Mobile Circuit Court." 476 So.2d at 99. *Page 418 
In that independent action, Broughton contended that the value of the trust assets had been decreased because of "Merchants' negligence in management of this trust and/or its willful and wanton neglect or misconduct in management of this trust."476 So.2d at 99. Merchants moved for a summary judgment, arguing that the trust-mismanagement claims were barred by the doctrine of res judicata. Broughton attempted to create a genuine issue of material fact in that regard by asserting in an affidavit that "`at no time during the final settlement of this estate nor during any part of the handling of this estate'" had he ever asserted against Merchants the claims he was asserting in circuit court and that he "never pursued the matter of the tortious conduct on the part of [Merchants] before any court."476 So.2d at 100. Merchants, for its part, contended that the circuit court action was barred by the final settlement order entered in the probate court, contending that those same issues had in fact been litigated. The trial court entered a summary judgment in favor of Merchants, and Broughton appealed.
This Court noted that the four essential elements of res judicata are: "(1) [P]rior judgment rendered by court of competent jurisdiction; (2) prior judgment rendered on the merits; (3) parties to both suits substantially identical; and (4) same cause of action present in both suits."476 So.2d at 100-01. It stated further that "[i]f these elements are present, then the former judgment is an absolute bar to any subsequent suit on the same cause of action, including any issue which was or could have been litigated in the prior action."476 So.2d at 101. This Court went on to find that each of the four essential elements was present in the case before it. First, it declared that the judgment of a probate court was entitled to the same finality as the judgment of any other court of general jurisdiction. "A probate court is a court of record and is `vested with original and general jurisdiction in practically all matters having to do with probate and administration of decedents' estates. . . . Its judgments are entitled to the "same validity and presumption which are accorded to judgments and decrees of other courts of general jurisdiction."'"476 So.2d at 101 (quoting Opinion of the Justices No. 187, 280 Ala. 653,657, 197 So.2d 456, 460 (1967)). The Court noted that § 12-13-1, Ala. Code 1975, which establishes the general jurisdiction of probate courts, accords that court original and general jurisdiction over "`[a]ll controversies in relation to the right of executorship or of administration.'" 476 So.2d at 101
(emphasis omitted). Unlike Cashion in the present case, Broughton brought before this Court a transcript of the final settlement hearing in the probate court, reflecting that Broughton, through examination of witnesses, had "raised the issues of mismanagement of the living trust." As noted, however, Broughton had requested only that the probate court order an independent audit.
In its analysis of whether "the cause of action is the same in both the original proceeding and the present action,"476 So.2d at 102, the Broughton Court explained that a determination of that issue "`depends on whether the issues in the two suits are the same and whether the same evidence would support a recovery in both suits.'" 476 So.2d at 102 (quotingDominex, Inc. v. Key, 456 So.2d 1047, 1054 (Ala. 1984)). The Court went on to explain that the proper inquiry in that regard would not be limited to a determination of what issues had actually been litigated, but rather would include consideration of what issues could have been litigated. The Court noted that "the facts alleged in support of [Broughton's] claims before the *Page 419 
circuit court are the same as those before the probate court."476 So.2d at 102. The court went on to observe:
 "Furthermore, Broughton could have raised the issues of fraud, conspiracy to defraud, and mismanagement of the living trust in the probate court proceedings. While that court could not have awarded him the damages he now seeks, he did have a recourse. Broughton could have asserted his claims sounding in tort by having the case removed to the circuit court before the probate court had rendered its decree of final settlement. Section 12-11-41, Code of 1975, provides:
 "`The administration of any estate may be removed from the probate court to the circuit court at any time before a final settlement thereof, by any heir, devisee, legatee, distributee, executor, administrator or administrator with the will annexed of any such estate, without assigning any special equity; and an order of removal must be made by the court, upon the filing of a sworn petition by any such heir, devisee, legatee, distributee, executor, administrator or administrator with the will annexed of any such estate, reciting that the petitioner is such heir, devisee, legatee, distributee, executor, administrator or administrator with the will annexed and that, in the opinion of the petitioner, such estate can be better administered in the circuit court than in the probate court.'"
476 So.2d at 102-03.
Broughton "raised" the issue of Merchants' mismanagement in its role as trustee, but then opted to request only an independent audit. Likewise, in her brief in support of insolvency, Cashion raised in some detail various alleged instances of mismanagement of the conservatorship estate by Torbert, and Torbert's misrepresentations to, and suppressions from, Judge McCooey regarding the status and value of the estate. After that detailed indictment of Torbert's handling of the conservatorship, however, Cashion opted not to challenge the alleged excessiveness of Torbert's fee and the quality of her services, stating rather only that a determination of those matters "perhaps" would be appropriate "at some later date." Judge McKinney effectively imposed a deadline on that "some later date" by ordering that a hearing for the purpose of rendering a final settlement of the insolvent estate would be conducted on February 25, 41 days after Cashion had asserted her option in that regard. As noted, Cashion filed her statement of her administration of the estate, along with supporting statements, and the matter proceeded to a hearing on February 25, at which Judge McKinney considered "the evidence, testimony, and briefs," all without objection from Cashion. Thereafter, during the eight days that followed before Judge McKinney entered his order on final settlement, Cashion registered no objection to the order she should certainly have understood would be forthcoming. Even after that order issued, Cashion did not object to its timing, but rather filed with Judge McKinney on April 9, 2002, her request for findings of fact and conclusions of law. (Although it is implicit from the briefs and other parts of the record that Judge McKinney complied with that request by issuing a statement of findings and conclusions, those findings and conclusions are not contained in the record on this appeal.) Cashion thereafter elected to appeal without applying to Judge McKinney for any relief from the order on final settlement.
We deem the facts and the substantive issues involved inBroughton to be sufficiently analogous and its rationale and holdings applicable to the procedural setting *Page 420 
of this case so as to provide strong support for Judge Reese's determination that the claims asserted by Cashion in her independent action were barred by the doctrine of res judicata. See also West, Robinson, and Lesley, supra.
Cashion also argues, citing Northwest Florida Truss, Inc. v.Baldwin County Commission, 782 So.2d 274 (Ala. 2000), Moore v.ClaimSouth, Inc., 628 So.2d 500 (Ala. 1993), and Hale v. UnionFoundry Co., 673 So.2d 762 (Ala.Civ.App. 1995), that Torbert's summary-judgment motion was procedurally flawed because it was not supported by a narrative summary of the undisputed material facts, as required by Rule 56, Ala. R. Civ. P. Torbert counters that the motions for summary judgment in the cited cases were bare-bones motions, lacking any narrative summary or specific references to documents. We note that this Court declared inNorthwest Florida Truss that Rule 56 "does not allow a party to file a simplistic motion devoid of a narrative summary and specific references to those portions of the record demonstrating that no genuine issue of material fact exists," 782 So.2d at 277, and that we stated in Moore that the summary-judgment motion in that case "did not contain anything close to a narrative summary of what it contended to be the undisputed material facts."
Torbert relies on International Fidelity Insurance Co. v.Gilliam, 659 So.2d 24 (Ala. 1995), a case where, as in the present case, the party filed a motion to dismiss and attached several exhibits, thereby converting the motion to one for a summary judgment. After the trial court heard the motion and entered the summary judgment, the nonmovant appealed, arguing that the motion was deficient under Rule 56, Ala. R. Civ. P., because it did not contain a narrative summary. This Court noted that not only had the movant attached a set of exhibits but also that the nonmovant had attached its own set of exhibits to its pleadings and that the trial judge had given the nonmovant an opportunity to supplement its opposition, after the hearing. This Court concluded that the motion was sufficiently supported.
In her motion to dismiss, Torbert provided a detailed history relevant to the defense of res judicata, attaching numerous supporting affidavits. In particular, she detailed, and attached copies of, Cashion's report of insolvency filed in the probate court; her brief filed in support of that report; the fact of the February 25, 2002, hearing; Judge McKinney's order on final settlement; Judge McKinney's March 5, 2002, order on final settlement; and Cashion's April 9, 2002, request for findings of fact and conclusions of law. Cashion likewise, under the auspices of her affidavit, submitted and authenticated 29 exhibits. Cashion provided further detailed information with reference to various documents in the materials she filed in opposition to Torbert's summary-judgment motion.
Upon examining all of these submissions, we conclude that the motion was adequately supported and adequately presented the undisputed issues of fact material to the defense of res judicata. Cashion's assertion in her brief to this Court that certain matters were not addressed in the probate court proceedings is irrelevant, as previously noted, in light of the fact that she clearly "raised" those issues in her brief in support of her report of insolvency, that she could have pursued them in the probate court, and that she had ample time to do so after being put on notice that the matter was headed for final settlement. If she did not wish for Judge McKinney to consider to any extent her objection to Torbert's claim on the basis of the various allegations of mismanagement *Page 421 
and fraud on the court, asserted by Cashion in her brief in support of her report of insolvency, one is left to wonder why she went to the trouble of thus "arguing" them to Judge McKinney.
Judge Reese was presented with a complaint that alleged that Torbert had greatly exaggerated the value of the conservatorship estate by misrepresenting and omitting information and thereby perpetrated the fraud upon the court to procure the court's approval of her "Application for Attorney's Fees"; that she had mismanaged the conservatorship estate in various ways, thereby failing to meet the standard of care for court-appointed conservators set out in § 26-2A-145, Ala. Code 1975, requiring a conservator to observe the standards "that would be observed by a prudent person dealing with the property of another"; and that her fee was excessive, given the actual size of the estate and the deficiency of her services. However, the only relief sought with respect to the orders entered by Judge McCooey was that her order approving Torbert's attorney fee be set aside. Thus, Judge McCooey's order of final settlement of the conservatorship estate was, and remains, unchallenged and thus fully operative. Both it and the order approving attorney fees were attached as exhibits to the complaint and therefore were a part of the materials presented to Judge Reese. Judge McCooey's order declared a final settlement of the conservatorship and stated that Torbert, as conservator, and her surety, were "discharged from all further liability." Judge Reese was also provided information fully sufficient to acquaint him with the pertinent proceedings in probate court.
We affirm Judge Reese's summary judgment and the order dismissing Cashion's independent action filed on October 10, 2002.
AFFIRMED.
SEE, BROWN, WOODALL, and STUART, JJ., concur.
[1] Judge Shashy subsequently affirmed Judge McKinney's order on final settlement. Cashion has appealed that adverse judgment to this Court (case no. 1020886).
[2] With respect to the statement in that case that "Broughton could have appealed to the circuit court for a trial de novo," this Court later explained in Martin v. Vreeland, 526 So.2d 24,25 n. 1 (Ala. 1988), "[t]hat sentence in Broughton should be read: `Broughton could have appealed to the circuit court,'" thus eliminating the phrase "for a trial de novo."
[3] The general law of res judicata — that the preclusive effect of a prior adjudication applies to claims made in a subsequent action which "could have been raised" in the prior adjudication — is well settled. See, e.g., West v. City ofMobile, 689 So.2d 14 (Ala. 1997) (prior action challenging City contracts barred subsequent action based upon competitive bid law because such claims could have been raised in the earlier litigation); Robinson v. Holley, 549 So.2d 1 (Ala. 1989) (earlier action filed by beneficiary of estate seeking accounting and declaratory judgment barred a second action by beneficiary raising claims of fraud that could have been raised in the earlier litigation); and Lesley v. City of Montgomery,485 So.2d 1088 (Ala. 1986) (property owner's action to enjoin City's construction of a retaining wall barred a subsequent action for damages that could have been claimed in the first action).