This appeal challenges the trial court's determination of the amount of attorney fees owed by David Lanier to Moore-Handley, Inc. We affirm.
Moore-Handley sued David Lanier and Logan Lanier, as guarantors of a promissory note executed by Madison, Alabama, Construction Supply Company ("MACS").[1] David Lanier and Logan Lanier filed general denials. Thereafter, Moore-Handley filed a motion for summary judgment, supported by affidavits. Subsequent to the filing of the lawsuit but prior to the filing of Moore-Handley's motion for summary judgment, Logan Lanier filed a voluntary petition in the United States Bankruptcy Court for the Northern District of Alabama for relief under Chapter 11 of Title 11 U.S.C. Under 11 U.S.C. § 362, the state court action against Logan Lanier was stayed as to any relief sought. As a result of the stay, no judgment was entered against Logan Lanier, and he is not a party to this appeal. Therefore, the trial court considered Moore-Handley's motion for summary judgment only as to David Lanier (hereinafter referred to as "Lanier"), who filed no materials in opposition to the motion. The trial court entered a summary judgment in favor of Moore-Handley, finding that Lanier was indebted to Moore-Handley "under the promissory note and open account balance sued upon in the complaint, in the amount of $142,754.15, together with reasonable attorney fees and costs." However, the trial court reserved "the question of the amount of reasonable attorney fees and cost of collection . . . for later determination." Subsequent to the trial court's entry of summary judgment but prior to the trial court's hearing on the amount of reasonable attorney fees, Lanier filed for protection under Chapter 11 of the United States Bankruptcy Code. Thereafter, Moore-Handley filed with the bankruptcy court a motion to modify the automatic stay so as to enable the trial court to determine the amount of reasonable attorney fees. The bankruptcy court granted Moore-Handley's motion. Subsequently, the trial court conducted a hearing on the amount of reasonable attorney fees, finding, in pertinent part, as follows:
 "1. Pursuant to the terms of the . . . guaranty executed by [Lanier], [Lanier] is liable to [Moore-Handley] for its reasonable attorney fees and costs incurred.
 2. After carefully weighing the factors set out in Peebles v. Miley, 439 So.2d 137 (Ala. 1983), the Court concludes that $35,688.54, which constitutes 25% of the total debt due and owing to [Moore-Handley], is a reasonable attorney's fee.
The Court further finds that expenses incurred by [Moore-Handley] in *Page 85 
the amount of $674.31 are reasonable and recoverable against [Lanier]."
Lanier contends that the trial court abused its discretion in awarding attorney fees based on 25% of the total debt due and owing Moore-Handley (25% of $142,754.15 for an award of $35,688.54). Specifically, Lanier contends that the trial court abused its discretion in awarding a sum that Lanier argues was three times the amount of the reasonable and customary fees Moore-Handley had incurred and had paid on an agreed-upon hourly rate basis ($11,096.90 based on 111.61 hours at an agreed-upon hourly rate).
It is undisputed that Lanier executed a guaranty to pay the reasonable attorney fees incurred by Moore-Handley in collecting the note:
 "[Lanier] shall pay to [Moore-Handley] all costs and expenses (including court costs and reasonable attorneys' fees) incurred by [Moore-Handley] in the preservation or enforcement of its rights and remedies hereunder."
In Alabama, in state law causes of action, attorney fees are recoverable as part of the costs of an action only where authorized by statute, when provided in a contract, or by special equity, such as a proceeding where the efforts of an attorney create a fund out of which fees may be paid.Reynolds v. First Alabama Bank of Montgomery, N.A.,471 So.2d 1238 (Ala. 1985); Eagerton v. Williams, 433 So.2d 436
(Ala. 1983); Shelby County Commission v. Smith, 372 So.2d 1092
(Ala. 1979). The reasonableness of an attorney fee under a contract providing for the recovery of reasonable attorney fees is largely within the discretion of the trial court. Peebles v.Miley, 439 So.2d 137 (Ala. 1983); see Irons v. Le Sueur,487 So.2d 1352 (Ala. 1986); Mann v. Mann, 451 So.2d 783 (Ala. 1984). This discretion is an " 'advised, just, judicial and revisable discretion in the light of the whole record.' Dent v. Foy,214 Ala. 243, 107 So. 210 (1925), Matthews v. Lytle, 220 Ala. 78,124 So. 197 (1929)." Irons v. Le Sueur, supra at 1359.
 " '[T]hough in reviewing the propriety of the fixation of such fees by the lower court, this court will be guided by its own judgment upon a consideration of the whole record, . . . we make such review with a presumption in favor of the ruling of the court below and will not set aside its decree unless we are convinced that that court abused the discretion wisely vested in it.' "
Army Aviation Center Federal Credit Union v. Poston,460 So.2d 139, 141 (Ala. 1984), quoting King v. Keith, 257 Ala. 463,60 So.2d 47 (1952). (Citations omitted.)
In Peebles v. Miley, supra, we set out the following 12 criteria that the trial court should consider in setting attorney fees: (1) the nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances. See Van Schaack v. AmSouth Bank, N.A.,530 So.2d 740 (Ala. 1988); Irons v. Le Sueur, supra; see, also, Talb, Inc.v. Dot Dot Corp., 559 So.2d 1054 (Ala. 1990). Although all of these criteria need not be met, they are available for the trial court to consider in connection with each claim for an award of attorney fees. Graddick v. First Farmers MerchantsNational Bank of Troy, 453 So.2d 1305 (Ala. 1984).
While we recognize that the reasonableness of an award of attorney fees is within the discretion of the trial court, subject to correction only for an abuse of discretion, we must be able to discern from the record what factors the trial court considered in determining the amount of attorney fees. VanSchaack v. AmSouth Bank, supra; Lolley v. Citizens Bank,494 So.2d 19 (Ala. 1986). *Page 86 
Therefore, the issue for our review is whether the trial court abused its discretion in awarding attorney fees in the amount of 25% of the judgment entered against Lanier.
In the instant case, the trial court's order stated, in pertinent part, as follows:
 "9. The uncontradicted testimony from the trial on the reasonableness of the attorney's fees showed that [Moore-Handley's] attorneys spent considerable time and effort in their collection attempts on behalf of [Moore-Handley] both prior and subsequent to the filing of the complaint. [Moore-Handley's] attorneys have also had to spend considerable time in the three bankruptcy proceedings of MACS, Logan Lanier and David Lanier. [Moore-Handley's] attorneys have been successful in their collection attempts in that they have obtained a judgment against David Lanier for the entire amount prayed for in the complaint and in that they have timely filed proofs of claims in all three bankruptcy matters, thereby preserving [Moore-Handley's] claims against all three joint obligors. Considering that MACS, the principal obligor, filed bankruptcy prior to the filing of the complaint against the guarantors [David Lanier and Logan Lanier], [Moore-Handley] has had to rely on the experience and reputation of its attorneys in the bankruptcy area. Based on the testimony of [Moore-Handley's] witnesses and this Court's familiarity with the fees charged by attorneys in this area, the Court finds that the minimum hourly fee assessed and expenses incurred are consistent with those customarily charged in this locality.
 "10. Considering the testimony of [Moore-Handley's] counsel and the testimony of . . . an independent attorney in this locality who is familiar with the fees charged by the attorneys in this area, and considering the factors set out in Peebles v. Miley [supra], the Court finds that a fee of 25% of the total amount due and owing to [Moore-Handley], or $35,688.54, is a reasonable attorney's fee. In addition, the Court finds that [Moore-Handley] has incurred actual expenses to-date in the amount of $674.31 which expenses are reasonable and recoverable."
At the hearing on the determination of reasonable attorney fees, Moore-Handley's attorney testified as to the fee arrangement Moore-Handley had entered into with his law firm:
 "Q. What is the nature of [the fee arrangement between Moore-Handley and its attorneys]?
 "A. [The] fee arrangement with Moore-Handley is that they will pay us our hourly rate plus reimburse us for our expenses on a monthly basis throughout this proceeding. But that whatever we recover for them, as long as we get a judgment and collect that judgment, on the amount that is set by this court as a reasonable attorney fee, that that amount would be paid to us; and we will then credit all amounts which we have billed [Moore-Handley] and collected from [Moore-Handley] to that reasonable attorney fee."
It is undisputed that Moore-Handley had been billed for and had paid $11,096.90, which constituted pay for 111.61 hours of work at an agreed-upon hourly rate. It is further undisputed that that rate was fair compensation for the work rendered, although the rate was considered low for someone with expertise in bankruptcy. In addition, testimony revealed that the anticipated hours of work involved to collect the judgment could be anywhere from 20 to 30 hours ("for prompt payment") to 150 hours ("for a contested fight with respect to the bankruptcies") and that a reasonable attorney fee in this case would be 20-25% of the amount awarded as the judgment.
Lanier did not offer evidence to refute Moore-Handley's contentions with respect to the hourly rate, with respect to the anticipated number of hours required to collect the judgment, or with respect to the reasonableness of the award of 20-25% of the judgment. Rather, Lanier contends that because Moore-Handley had agreed to pay a reasonable hourly rate during the course of the matter, the trial court should *Page 87 
have limited the award of fees to no more than the fees that were billed to Moore-Handley. In other words, Lanier contends that the trial court should have awarded only $11,096.90 as reasonable attorney fees based on 111.61 hours at the agreed-upon hourly rate, instead of the $35,688.54 that the trial court awarded based on 25% of the total judgment entered against Lanier.
While we recognize Moore-Handley's fee arrangement, that arrangement is not conclusive evidence of a reasonable attorney fee; it is but one factor for the trial court to consider in making its determination. Reynolds v. First Alabama Bank ofMontgomery, N.A., 471 So.2d 1238 (Ala. 1985).
 "The determination of a reasonable attorney's fee should not be done in a wooden, inflexible manner, but should be done so that all factors will be given their proper interplay."
Peebles v. Miley, supra, at 143.
Based on our review of the record, it appears that the trial court gave the factors set forth in Peebles their proper interplay. While we may not have awarded 25% of the judgment entered against Lanier ($35,688.54) as attorney fees under the facts in this case, we cannot say that the trial court abused its discretion in so doing.
AFFIRMED.
HORNSBY, C.J., and JONES, SHORES and KENNEDY, JJ., concur.
[1] MACS had executed a renewal promissory note payable to Moore-Handley in the amount of $151,250.25. Contemporaneously with the execution of the note by MACS, David Lanier and Logan Lanier had executed an unconditional guaranty of payment to Moore-Handley of all amounts due and arising in connection with that promissory note. MACS defaulted on its note and initially filed for protection under Chapter 11 of the Bankruptcy Code and then voluntarily converted the filing to a Chapter 7 filing. Thus, because Moore-Handley could not recover any amounts due from MACS, Moore-Handley demanded payment on the guaranty executed by David Lanier and Logan Lanier.