MONROE, Judge.
Montgomery Wholesale Lumber sued Michael Norman for failure to pay for lumber he had purchased. In November 1993, five months after the complaint was filed, Michael Norman filed a notice of bankruptcy. Montgomery Wholesale Lumber then amended its complaint to add Max Norman, Michael’s father, and Barbara Norman, Michael’s wife, as defendants, alleging that they were part of the partnership, joint venture, or common business known as Norman Builders. Michael contended that he was the sole proprietor of Norman Builders. After a trial, the trial court, as the finder of fact, found that Norman Builders was a partnership consisting of Michael, Max, and Barbara, and entered a judgment against Max and Barbara for $40,051.65.
After the trial court entered the judgment, Montgomery Wholesale Lumber filed a motion for an amended judgment, seeking an attorney fee and costs of collection. The motion was denied by operation of law under Rule 59.1, Ala.R.Civ.P. Max appeals from the judgment against him. Montgomery Wholesale Lumber cross appeals from the denial of an attorney fee and costs.
Max Norman contends that the trial court erred in finding that Norman Builders was a partnership consisting of Michael, Max, and Barbara Norman. In support of his argument, Max points out that each of the Normans testified (1) that there was no partnership; (2) that there was no partnership agreement; and (3) that neither Barbara nor Max shared in the profits, losses, or management of Norman Builders. Checks paid to Max on the Norman Builders account, Max argues, were for debts Michael owed to Max, who helped out when Michael was having financial difficulties.
The trial court heard ore tenus testimony in this case.
“The standard of review applicable to judgments based on ore tenus evidence is well established. Where a trial court has heard ore tenus testimony, as in this case, its judgment based on that evidence is presumed correct and will be reversed only if, after consideration of the evidence and all reasonable inferences to be drawn therefrom, the judgment is found to be plainly and palpably wrong.’ Mclnnis v. Lay, 533 So.2d 581, 582 (Ala.1988) ... Furthermore, ‘[t]his Court ... will affirm the trial judge’s decision if, under any reasonable aspect, it is supported by any credible evidence.’ Chism v. Hicks, 423 So.2d 143, 144 (Ala.1982) ... (emphasis added). Finally, ‘this court cannot overturn [the] finding[s] of fact by the lower court unless the decision is unsupported by the evidence ... and is plainly and palpably erroneous.’ ”
Humphries v. Whiteley, 565 So.2d 96, 101-02, (Ala.1990); Meadows v. First National Bank of Ashford, 568 So.2d 303, 304 (Ala.1990).
Section 10-8-20, Ala.Code 1975, sets out the rules for determining whether a partnership exists. It reads:
“In determining whether a partnership exists, these rules shall apply:
“(1) Except as provided by Section 10-8-55, persons who are not partners as to each other are not partners as to third persons.
“(2) Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property or part ownership does not of itself establish a partnership, whether such co-owners do or do not share any profits made by the use of the property.
“(3) The sharing of gross returns does not of itself establish a partnership, whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived.
*1113 “(4) The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment:
“a. As a debt by installments or otherwise;
“b. As wages of án employee or rent to a landlord;
“c. As an annuity to a widow or representative of a deceased partner;
“d. As interest or other payment on a loan, though the amount of payment varies with the profits of the business; or
“e. As the consideration for the sale of the goodwill of a business or other property by installments or otherwise.
“(5) An express agreement among the partners, or between business associates, that a person, who would otherwise be deemed a partner under this chapter, will not personally be hable for partnership obligations is not, in itself, evidence that such person is not a partner; provided, that such agreement shall not be effective as against third parties unless such person is a limited partner under the laws of Alabama governing limited partnerships.”
In addition, the Supreme Court has held that there is no settled test for determining the existence of a partnership. “That determination is made by reviewing all the attendant circumstances, including the right to manage and control the business.” Vance v. Huff, 568 So.2d 745, 748 (Ala.1990) (citing § 10-8-20, Ala.Code 1975, and McCrary v. Butler, 540 So.2d 736 (Ala.1989)).
The record shows that while some evidence presented to the trial court supports Max’s contention that Norman Builders was not a partnership, other evidence is to the contrary. For example, Preston and Mary Watts, whose home was built by Norman Builders, testified that Max was present during negotiations for the building of their house, that Max was the person responsible at the building site when Michael was not there, and that Max negotiated with subcontractors and materialmen. John James, whose home also was built by Norman Builders, testified that Max supervised at the building site; that after James had trouble with Michael’s not paying the bills, Max took on the role of negotiator for future work and took control of the money; that when Michael had surgery, Max had the sole responsibility as contractor; and that Max and Barbara both conducted business and signed contracts as Norman Builders. Other testimony showed that Max often paid the debts of Norman Builders and paid for equipment used by the business.
There is also some evidence that Max and Barbara, neither of whom was an employee of Norman Builders, shared in the profits of the business. For example, Barbara said that Norman Builders regularly put money in amounts up to $2,000, into her savings account. Norman Builders provided Barbara and Max with cellular telephones. Norman Builders also paid the down payment and closing costs for a home that was purchased in the name of Max and Barbara Norman, as husband and wife. Michael testified that Norman Builders bought the home for the benefit of Max and Barbara.
Credible evidence shows that Max Norman participated in the control of Norman Builders, and from that evidence one could reasonably infer that he shared both debts and profits from the business. Under the ore tenus rule, we cannot say that the trial court erred in finding that Max Norman was a partner in Norman Builders and holding that Max was liable for the debt of the partnership.
Max also contends that the trial court erred in awarding Montgomery Wholesale Lumber a judgment of $40,051.65. Paul Windham, owner of Montgomery Wholesale Lumber, testified that that was the total amount Norman Builders owed for the purchase of lumber. However, Windham also testified that since Michael Norman had filed his notice of bankruptcy, Windham had received some payments toward that debt from the bankruptcy trustee. The total of those payments, at the time of trial, was $4,400.
As Montgomery Wholesale Lumber points out in its brief to this court, when a third *1114 party makes a payment on behalf of a debt- or/defendant, the payment will be credited against a judgment subsequently obtained against the defendant. Boles v. Steel, 48 Ala.App. 268, 264 So.2d 191 (1972), cert. quashed 288 Ala. 732, 264 So.2d 194 (1972). Michael Norman’s payments to Montgomery Wholesale Lumber, through the bankruptcy trustee, should be credited toward the amount of the judgment against Max Norman. Therefore, this cause is remanded to the trial court for the court to consider the amount Michael’s bankruptcy trustee has paid to Montgomery Wholesale Lumber in determining the amount of the judgment against Max Norman.
Montgomery Wholesale Lumber cross-appealed, claiming the trial court had erred in denying its motion for an attorney fee and expenses. After the trial court entered a judgment in its favor, Montgomery Wholesale Lumber asked the trial court to amend its judgment to include an attorney fee of $21,042 and expenses of $1,781.65. The motion was denied by operation of law pursuant to Rule 59.1, Ala.R.CivApp. In addition to the $22,823.65 in fees and expenses already requested, Montgomery Wholesale Lumber asks this court to remand this case to the circuit court for a determination of fees and expenses that it says it should be awarded for work done subsequent to trial and in the bankruptcy court.
At trial, Montgomery Wholesale Lumber owner Paul Windham testified that, at that time, “a little over $21,000” had been incurred in legal expenses, which included fees and expenses incurred pursuing the claim against Michael Norman in the bankruptcy court. As pointed out above, $1,781 of the total amount was for expenses, the remainder was the attorney fee. The total amount requested was more than 50% of the amount collected.
The credit application Michael Norman completed when purchasing the lumber from Montgomery Wholesale Lumber contained a provision by which the purchaser agreed to pay a reasonable attorney fee and court costs incurred in the supplier’s collection of the debt. Although Michael Norman signed the application as an individual guarantor, he completed the application for Norman Builders. Because the trial court found that Norman Builders was a partnership, the partners are liable for all debts of the partnership. § 10-8-52, Ala.Code 1975; Pitman v. Flanagan Lumber Co., 567 So.2d 1335 (Ala.1990). A reasonable attorney fee for the collection of the debt owed by the partnership would be a debt of the partnership.
The Alabama Supreme Court has held that “[t]he reasonableness of an attorney fee under a contract providing for the recovery of reasonable attorney fees is largely within the discretion of the trial court.” Lanier v. Moore-Handley, Inc., 575 So.2d 83, 85 (Ala.1991).
“When reviewing the amount awarded as an attorney’s fee in a ease, the appellate court should consider the entire record. Such a review of the record is made with a presumption in favor of the trial court’s determination. Further, the trial court’s judgment will not be disturbed on appeal unless it is apparent from a review of the entire record that the trial court abused its discretion.”
Mapes v. Prickett, 644 So.2d 478, 479 (Ala.Civ.App.1994), citing Lanier, 575 So.2d at 85.
There are 12 factors that the trial court should consider when awarding attorney fees: (1) the nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of the attorney’s responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances. Anderson v. Lee, 621 So.2d 1305, 1307 (Ala.1993).
“Although all of these criteria need not be met, they are available for the trial *1115 court to consider in connection with each claim for an award of attorney fees.
“While we recognize that the reasonableness of an award of attorney fees is within the discretion of the trial court, subject to correction only for an abuse of discretion, we must be able to discern from the record what factors the trial court considered in determining the amount of attorney fees.”
Mopes, 644 So.2d at 479 (citations omitted).
The record does not provide this court with an abundance of evidence from which to determine what factors the trial court used in denying an attorney fee. However, there is evidence in the record that Montgomery Wholesale Lumber incurred legal expenses in collecting the debt, and Montgomery Wholesale Lumber is, therefore, entitled to a reasonable attorney fee. The amount requested by Montgomery Wholesale Lumber, which is more than half the amount collected, is excessive, however. Therefore, the denial of Montgomery Wholesale Lumber’s request for an attorney fee is reversed, and we remand this cause to the circuit court with instructions that the court hold a hearing for a determination of a reasonable attorney fee, considering those factors set out above.
The judgment of the trial court is affirmed insofar as it holds that Norman Builders was a partnership and that Max Norman was a partner in the business. The cause is remanded to the trial court, however, for a determination of the amount of the judgment to be awarded after credit is given to the defendants for payments made by Michael Norman’s bankruptcy trustee and for a determination of a reasonable attorney fee.
AFFIRMED IN PART; REVERSED IN PART; REMANDED WITH INSTRUCTIONS.
THIGPEN, YATES, and CRAWLEY, JJ., concur.
ROBERTSON, P.J., concurs in the result.