HARWOOD, Justice.
As Amanda Lynn Cashion, the executrix of the estate of Dot C. Smith, deceased (“Cashion”), succinctly stated in her initial brief to this Court:
“This appeal is taken from the December 5, 2002 final Order entered by Circuit Judge William A. Shashy in the matter of Estate of Dot C. Smith, deceased, Montgomery County Circuit Court, Alabama, ... which (1) affirmed the March 5, 2002 Order on Final Settlement entered by Probate Judge Reese McKinney in Montgomery County Probate Court, Alabama, ..., and (2) granted Creditor Mary Dixon Torbert’s Motion to Strike the Estate’s Objections to certain claims against the Estate.”
We affirm in part and reverse in part.
Mary Dixon Torbert, an attorney in Montgomery, served during Dot Smith’s life as the court-appointed conservator of her estate, and, upon final settlement of that conservatorship, was awarded an attorney’s fee of $15,298.75.
We dealt with the appeal of a related case involving the same parties in Cashion v. Torbert, 881 So.2d 408 (Ala.2003). Our opinion in that case detailed the underlying “fairly convoluted procedural history” involved in the two cases.
After Ms. Smith died, Torbert filed a claim against her estate, of which Cashion was the successor executrix, for her attorney-fee award as conservator. Cashion subsequently determined that the estate was insolvent and filed a report of insolvency with Reese McKinney, Jr., Judge of Probate of Montgomery County. She listed the total assets of the estate as $18,511.46, the correctness of which is not challenged by any party to this appeal.
Section 43-2-371, Ala.Code 1975, provides:
“The debts against the estates of decedents are to be paid in the following order:
“(1) The funeral expenses.
*747 “(2) The fees and charges of administration.
“(3) Expenses of the last sickness.
“(4) Taxes assessed on the estate of the decedent previous to his death.
“(5) Debts due to employees, as such, for services rendered the year of the death of the decedent.
“(6) The other debts of the decedent.”
Relating specifically to insolvent estates, § 48-2-700, Ala.Code 1975, provides:
“When the real and personal property of any decedent is insufficient for the payment of the debts, the proceeds arising from the sale thereof must be distributed as directed by section 43-2-371 in proportion to the amounts due to each class of creditors, in the order in such section specified.”
In her report of insolvency, Cashion stated that the following claims had been filed against the estate, indicating as to each claim the subsection in § 43-2-371 to which Cashion believed it should be assigned:
“Hamilton Funeral Home
§ 43-2-371(1) (claim) $ 1,010.85
“South Haven Health & Rehabilitation
§ 43-2-371(3) (claim) 11,426.58
“American Pharmaceutical Services
§ 43-2-371(3) (claim) 596.68
“Barbara Holliman and Ann Scheren (d/b/a Treasure Chest Antiques)
§ 43-2-371(6) (claim) 2,070.00
“Mary Dixon Torbert
§ 43-2-371(6) (claim) 15,298.75
“Thomas G. Green/E astside Realty
§ 43-2-371(6) (claim) 478.79
“Alabama Gas Company
§ 43-2-371(6) (claim) 120.07
“Alabama Gas Company
§ 43-2-371(6) (claim) 62.41
“Total Proofs of Claims Filed Against Estate
$31,064.13 ”
In addition to Cashion and Torbert, only Thomas G. Green/Eastside Realty (“Green”) has filed an appearance in this appeal, and then only to adopt Torbert’s brief.
Additionally, Cashion requested reimbursement of expenses incurred by her and her predecessor executrix in the amount of $1,800, and payment of “attorneys fees of approximately $4,000.00 to date.” Cashion asserted that the $5,800 represented by those two items was due to be paid as a debt under § 43-2-371(2), representing “fees and charges of administration.”
As we stated in Cashion v. Torbert, supra:
“Judge McKinney conducted a hearing on the insolvency report on January 9, 2002, at which, according to a later order, he ‘heard testimony and evidence on said report and [the supporting] statements’ and declared the estate insolvent. On January 15, 2002, Cashion served a ‘Brief in Support of Report of Insolvency’ (the filing date of the brief is not established by the record) in which, among other things, she made detailed assertions and referenced numerous attached exhibits, alleging that Torbert had exaggerated the net worth of the conservatorship estate in her final accounting to Judge McCooey and had misrepresented and omitted certain assets and liabilities.
“On January 18, 2002, Judge McKinney issued a ‘Decree of Insolvency,’ declaring the estate insolvent and ordering ‘that Amanda Linn Cashion, as executrix, appear and make a statement of her administration for final settlement of said estate on the 25th day of February, 2002, at 1:30 o’clock p.m.’ The hearing was held as scheduled on February 25, and Judge McKinney heard Cashion’s *748 statement of her administration of the estate ‘and any objections to same.’
“On March 5, Judge McKinney issued his ‘Order on Final Settlement,’ in which he found, ‘upon consideration of all the evidence, testimony, and briefs,’ that the available assets of the estate amounted to $18,511.46, and that they should be disbursed to satisfy certain claims and expenses of the estate, including Tor-bert’s claim, reduced from the $15,298.75 awarded by Judge McCooey to $15,286.11.”
881 So.2d at 410.
In his March 5 order, Judge McKinney further declared that Torbert would “be responsible for paying outstanding debts that were incurred under the Conservator-ship of Dot C. Smith (Treasure [Chest] Antiques $2,070.00 and [Green] $478.79) from the funds she will receive from this Estate.... ” The order also directed payment of the bill of Hamilton Funeral Home, the expenses incurred by Cashion and her predecessor executrix in the amount of $1,800, and court costs in the amount of $414.50. Thus, the aggregate amount of the claims and court costs approved was $18,511.46, exactly matching the funds available for payment of claims and expenses. No mention was made of the claims of South Haven Health & Rehabilitation (“South Haven”), American Pharmaceutical Services, and Alabama Gas Company.
Although in the report of insolvency Cashion characterized the $4,000 component of her $5,800 claim as “attorney fees,” in her brief in support of the report of insolvency she clarified the $5,800 claim as one being made on behalf of herself and the predecessor executrix “under AIa.Code § 48-2-371(2), for $5,800 for fees and charges that accrued for the administration of the Estate.” She elaborated as follows:
“[T]he Executrix limited the § 43-2-371(2) claim for fees and charges of administration to the amount remaining after deducting the funeral home expenses [as a § 43-2-371(1) debt] and the nursing home and pharmacy expenses [as § 43-2-371(3) debts] from the Estate’s assets. This left $5,800, an amount which does not begin to cover the total expenses incurred and the time and effort the Executrix has devoted to this Estate.
“In addition to performing the routine tasks associated with examining, evaluating and determining the status of the Decedent’s affairs, in excess of 100 hours have been spent and many 700-mile round-trips and many more long-distance phone calls have been made from Rossville [Tennessee] and Memphis, Tennessee, to Montgomery and elsewhere in an effort to accomplish the following:
“find Decedent’s supposedly ‘Lost’ original Will,
“respond to the reports of multiple break-ins to Decedent’s home and the theft and damage done to Decedent’s personal property,
“report the burglaries to the police and the insurance company,
“obtain the Decedent’s records withheld by Ms. Torbert for four months after Decedent’s death,
“obtain a death certificate,
“consult with attorneys in Montgomery and elsewhere,
“meet with bank officials,
“ascertain which items had been taken, determine the value of items collected over a forty-year marriage, and negotiate with the insurance company,
“attempt to negotiate with the mortgage company and its attorneys, *749 “clear out the house so that it could be turned over to the mortgage company; and,
“research Alabama law on probate matters, mortgages, conservatorships, etc.
“These efforts have extended beyond a year — for an estate which has only $18,511.46 in assets and $36,864.18 in debts.”
Subsequently, in her “Statement for Final Settlement,” Cashion again listed the $5,800 as “fees and charges then accrued for the administration of the Estate.”
On April 12, 2002, Cashion appealed Judge McKinney’s March 5 order to the Montgomery Circuit Court “pursuant to Ala.Code [1975,] §§ 12-22-2 and 12-22-51(5).” On that same date, Cashion filed with Judge McKinney a “Request for Findings of Fact and Conclusions of Law.” On April 29, 2002, Judge McKinney issued the following responsive summary:
“An Order on Final Settlement of the Insolvent Estate of Dot C. Smith, deceased, was signed on March 5, 2002. A Request for Findings of Fact and Conclusions of Law was filed on April 15, 2002[1] by Amanda Linn Cashion, Successor Executrix of said estate. This Court based its findings on the following facts:
“1.) James W. Cameron, Esq., Attorney for Cathy Lou Tipler, the Executrix, filed his Petition for Discharge as Attorney on March 14, 2001 in which he stated that Mary-Frank Brown, Esq. had been employed as the attorney to represent the Estate. On April 10, 2001, a Notice of Resignation as Executrix was filed by Cathy Lou Tipler and a Motion to Substitute Executrix was filed by Amanda Linn Cashion. These pleadings and all future pleadings were filed with no attorney of record. Therefore, this Court could find no justification to award the attorney’s fees which were listed as an expense in the Report of Insolvency in the amount of $4,000.00 to be paid out of the Estate.
“2.) A Circuit Court Order, dated February 8, 2001, granted Mary Dixon Tor-bert, Esq., fees for administering the Estate of Dot C. Smith, Incapacitated, and that under Section 43-2-371(2) the Court is of the opinion that the costs associated with the Conservatorship and its administration are to be considered as ‘the fees and charges of administration,’ that have priority under.the law. “3.) The Petition for- Protective Placement which was filed in Circuit Court on July 12, 2000, by the Montgomery County Department of Human Resources, stated that Dot C. Smith required the care of a licensed nursing home facility to protect her health and safety due to the fact that there was no guardian or relative or other person able, willing, and suitable to provide care for the ward. Having reviewed the claim, with the attached invoice, filed by [South Haven], the Court is of the opinion that the bill was for room charges and the upkeep and comfort of the ward rather than a last sickness.”
Both Cashion and Torbert refer to, and rely on, the contents of Judge McKinney’s summary; neither raises any question about whether it is eligible for consideration by us, despite the fact that it was issued after the appeal was taken from the probate court to the circuit court.
On July 11, 2002, Cashion filed in the circuit court formal objections to the claims against the estate filed by Alabama Gas Company, Green, Treasure Chest, and Torbert. On August 9, Torbert moved to *750 strike all of the objections, contending that § 43-2-747, Ala.Code 1975, required such objections to be presented to, and resolved by, the probate court and that, therefore, they could not be presented for the first time in the circuit court, because the circuit court’s review was not de novo but was limited to the record from the probate court. Torbert cited Sanders v. Brooks, 611 So.2d 336 (Ala.1992), and Smith v. Smith, 596 So.2d 1 (Ala.1992), in support of her argument. Cashion argued that, under § 43-2-747, Ala.Code 1975, she had six months after the estate was declared insolvent to file an objection, but that Judge McKinney had “prematurely” entered the final settlement order, leaving her with no choice but to file the objections in the circuit court.
Montgomery Circuit Judge William A. Shashy presided over the appeal in the circuit court and at some point conducted a conference telephone call among all the parties. No documentation of that telephone conference appears in the record, but Cashion states that the subject of the conference call was Torbert’s motion to strike, whereas Torbert characterizes the call as “a telephone status conference.” On December 5, 2002, Judge Shashy granted Torbert’s motion to strike Cash-ion’s objections and affirmed Judge McKinney’s order on final settlement.
On appeal to this Court, Cashion lists six allegations for review:
“I. Judge McKinney improperly considered creditors’ objections.
“II. Probate Judge McKinney improperly classified certain claims as to priority.
“HI. Probate Judge McKinney improperly assigned preference to certain creditors.
“TV. Probate Judge McKinney entered [the] Order on Final Settlement prematurely.
“V. Circuit Judge Shashy erred in striking [the] objections.
“VI. Circuit court appellate review was inadequate.”
We resolved issue IV in Cashion v. Torbert, supra. With respect to issue I, Cashion’s argument is that Judge McKinney improperly allowed Torbert, Treasure Chest, and Green to register objections at the January 9 hearing to the priority Cashion had assigned to their claims. In a memorandum brief Torbert filed with Judge McKinney in response to the report of insolvency, she stated that she was not denying that the estate was insolvent, rather she was only “objecting to and contesting the order of preference of certain debts against the Estate at issue.” In her brief in response, Cashion argued that by the time of the January 9 hearing, the creditors had waived their right to challenge the priority she had assigned to the various claims, because § 43-2-705, Ala. Code 1975, specifies that any creditor of a purportedly insolvent estate “may make an issue as to the correctness of [a report of insolvency] by denying in writing that the estate is insolvent,” and no creditor filed such a written denial.
Cashion contended that § 43-2-702(3), Ala.Code 1975, required her to include in the report of insolvency the character and the amount of each claim, which, she said, meant that she had to include “the characterization of each debt,” following the order of preference set out in § 43-2-371, Ala.Code 1975. Therefore, she asserted, her priority rankings were an integral part of the report, the correctness of which had to be denied in writing.
In her brief to this Court, Cashion argues differently, asserting that the creditors could not properly have presented challenges to the priorities of the claims at the January 9 hearing, because § 43-2-705 *751 “provides that only one issue is to be determined at the hearing on the Report of Insolvency — the Estate’s insolvency. It does not permit the presentation of challenges as to the priority of the Estate’s creditors.” Cashion continues in her brief that challenges to the priorities of the claims constitute objections to the claims, and § 43-2-747 requires that such objections be made in writing only after § 43-2-705 objections to the correctness of a report of insolvency “have been resolved and the Estate has been declared insolvent.” (Cashion’s brief, p. 17.)
Thus, Cashion abandons on appeal the argument she made to Judge McKinney, relying instead on an entirely different argument. This Court will not consider a legal argument that was never presented to the trial court but was presented for the first time to this Court, particularly where an entirely different legal argument was made to the trial court on the issue. Yellow Dog Dev., LLC v. Bibb County, 871 So.2d 39 (Ala.2003); Rampey v. Novartis Consumer Health, Inc., 867 So.2d 1079 (Ala.2003); and Byrd v. Lamar, 846 So.2d 334 (Ala.2002).
Moreover, in advance of Judge McKinney’s declaring the estate insolvent, Tor-bert filed a brief, as she had been directed to do by Judge McKinney’s January 18 order, and detailed in that brief her objections to Cashion’s classification of her claim and the claim of Hamilton Funeral Home. Thus, by the time Judge McKinney issued his declaration of insolvency, Tor-bert had submitted her objections in writing. In addition to declaring the estate insolvent on January 18, Judge McKinney ordered Cashion to appear at a hearing on February 25, 2002, to “make a statement of her administration for final settlement of said estate.” In the statement for final settlement she filed after the hearing, Cashion reiterated the priority rankings of the claims and proposed that the claims of Hamilton Funeral Home, South Haven, and American Pharmaceutical Services, and the fees and charges accrued for the administration of the estate in the amount of $5,800 be paid. She pointed out that payment of those items “would exhaust the assets of the Estate and leave nothing to be paid to the remaining four creditors,” each of whom should be classified as § 43-2-371(6) “other debts of the decedent.” Thus, the issue of the priorities of the claims was squarely before Judge McKinney. Lastly, because Judge McKinney’s order on final settlement required Cashion to pay Treasure Chest and Green claims out of the share allocated to her, any question of their preference status is moot.
In connection with issue II, Cashion argues that Judge McKinney should have allowed her not only expenses but also the entire amount of her claim for compensation. She acknowledges that because of a math error and her failure to take into account the $415 court costs, the $5,800 claim is due to be reduced to $5,062. She argues that the claims of Torbert, Treasure Chest, and Green should not have been treated as fees and charges of administration of the probate estate. Finally, she argues that Judge McKinney erred in not according the claims of South Haven and American Pharmaceutical Services status under § 43-2-371(3) as “expenses of the last illness.”
Before addressing the merits of those arguments, we note that the record contains no transcript for either the January 9, 2002, or the February 25, 2002, hearings conducted by Judge McKinney. In her brief, Torbert asserts: ■
“Further, the Record on Appeal here does not include the transcripts of the Probate Court hearings. In this situation, appellate courts • are required to assume that the probate court’s ore ten- *752 us findings were supported by the evidence it had before it. Patterson v. Patterson, 765 So.2d 8 (Ala.Civ.App.1999) (emphasis added).”
Cashion argues in her reply brief that “Torbert could have requested the transcripts,” and that Torbert’s failure to do so was probably an intentional decision based on her realization that “[h]ad the transcript been included,” Torbert would not be able to argue that Judge McKinney’s order on final settlement was supported by the evidence. We noted in Cashion v. Torbert, 881 So.2d at 416, that in her reply brief on that appeal, “Cashion chide[d] Torbert for failing to point to any portion of the probate court hearing transcript” to support her contention that a particular issue had in fact been raised before the probate court. Cashion now advises this Court that she herself “elected not to request the transcripts because: (1) the hearings were not evidentiary in nature; (2) Probate Judge McKinney made no findings of facts; and (3) the issues on appeal involve questions of law.” (Cash-ion’s reply brief, p. 6 n. 12.) Cashion’s contention that the hearings before Judge McKinney were not evidentiary in nature is contradicted by his statement in the declaration of insolvency that “the Court heard testimony and evidence,” and his statement in the order on final settlement that he had considered “all the evidence, testimony, and briefs.” Torbert cites Patterson v. Patterson, 765 So.2d 8 (Ala.Civ.App.1999), which states:
“The probate court made findings of fact as to each of the issues that were later presented on appeal to the circuit court and as to each of the issues presented on appeal to this court. The record on appeal does not include the transcript of the probate court’s hearing. We must assume that the probate court’s findings are supported by the evidence it had before it.”
765 So.2d at 11.
In Lockhart v. Robbins, 386 So.2d 424, 425 (Ala.1980), this Court reaffirmed the “well-established” principle that it “will not disturb factual findings and conclusions of the trial court when it affirmatively appears that there was evidence before the trial court which is not in the record on appeal.”
Judge McKinney’s April 29, 2002, “summary” specified that his reason for disallowing the $4,000 portion of Cashion’s $5,800 claim was that no attorney of record had appeared for the estate after attorney James W. Cameron had been allowed to withdraw, and Cashion had filed all pleadings “with no attorney of record.” Judge McKinney concluded, therefore, that there was “no justification” for ordering attorney fees to be paid out of the estate. As we explained earlier, despite Cashion’s initial statement in the report of insolvency that she was requesting payment of “attorney’s fees of approximately $4,000.00 to date,” she thereafter clarified and explained in her brief in support of that report that she had actually limited her “claim for fees and charges of administration to the amount remaining after deducting the funeral home expenses and the nursing home and pharmacy expenses” and that the resulting $5,800 claim represented “an amount which does not begin to cover the total expenses incurred in the time and effort the executrix has devoted to this Estate.” She explained that, in addition to performing the routine tasks associated with the administration of the estate, she had spent in excess of 100 hours, and had made many 700-mile-round-trips from Tennessee to Montgomery to perform the services she enumerated. Only the last of those services, “researched Alabama law on probate matters, mortgages, conservatorships, *753 etc.,” would seemingly implicate the need for legal skills. Even considering only the additional 100 hours referenced, the compensation claimed of $4,000 would represent an hourly charge of only $40, well below the standard hourly fee for an attorney.
Moreover, it is undisputed that Cashion is an attorney duly licensed to practice in the State of Tennessee and that this Court has admitted her pro hac vice in this appeal. In Mills v. Neville, 443 So.2d 935, 937 (Ala.1983), the Court declared that the fact that an executor-attorney “employs himself’ does not raise a conflict of interest and that where an executor appointed by a will is also an attorney, there is no reason why that individual “shall not be allowed a reasonable compensation for his services” rendered the estate in his capacity as attorney, so long as the services had been necessarily and bona fide rendered for the benefit of the estate. The Mills Court noted that in Clark v. Knox, 70 Ala. 607, 617 (1881), the Court had declared that “ ‘[wjhen the executor ... is an attorney or solicitor, and in either capacity renders professional services, necessary in litigation for the benefit, or demanded by the necessities of the estate, he is entitled to compensation for such services.... ’ ” Further, the Court noted the holding of Alexander v. Bates, 127 Ala. 328, 28 So. 415 (1900), that “[e]ven where legatees have themselves been represented by counsel, an executor also acting as attorney for the estate, and thus incidentally acting for the beneficiaries, nevertheless has been allowed to recover for his own services as an attorney.” 443 So.2d at 938.
We find nowhere in the record any suggestion that anyone objected to the compensation element of Cashion’s request for payment. Torbert raised before Judge McKinney only the issues whether Tor-bert’s claim should be accorded the preferred status of fees and charges of administration; whether, alternatively, Torbert’s claim should be classified as expenses of the last illness; and whether the claim of South Haven should be placed among the “other debts of the decedent.” Before this Court, Torbert argues concerning Cash-ion’s demand for compensation as executrix only that “Judge McKinney did not award the attorney’s fees because he noted that a previous attorney for the Estate had been discharged long before and that no subsequent pleadings had been filed by an attorney of record,” thereby eliminating any justification for an award of attorney fees. She provides no citations to caselaw or to statutory authority.
Section 43-2-848 provides, in pertinent part, as follows:
“(a) A personal representative is entitled to reasonable compensation for services as may appear to the court to be fair considering such factors that may include, but are not limited to, the novelty and difficulty of the administrative process, the skill requisite to perform the service, the likelihood that the acceptance of the particular employment will preclude other employment, the fee customarily charged in the locality for similar services, the amount involved and the results obtained, the requirements imposed by the circumstances and condition of the estate, the nature and length of the professional relationship with the decedent, the experience, reputation, diligence, and ability of the person performing the services, the liability, financial or otherwise, of the personal representative, or the risk and responsibility involved, which shall not exceed two and one-half percent of the value of all property received and under the possession and control of the personal representative *754 and two and one-half percent of all disbursements.
“(b) In addition the court may allow a reasonable compensation for extraordinary services performed for the estate.”
A comparison of the factors thus prescribed by the Legislature for determining “reasonable compensation for services” to be awarded a personal representative of an estate with the factors this Court prescribed in Peebles v. Miley, 439 So.2d 137 (Ala.1983) (as reaffirmed on numerous occasions, e.g., Lanier v. Moore-Handley, Inc., 575 So.2d 83 (Ala.1991)), for determining the reasonableness of attorney fees generally, reveals that the criteria are essentially the same.
The probate court erred in disallowing entirely Cashion’s claim for compensation for the services she rendered to the estate. Nonetheless, the last clause of § 43-2-848(a) limits that compensation to “two and one-half percent of the value of all property received and under the possession and control of the personal representative and two and one-half percent of all disbursements.” It is undisputed that the total of all of the property of the estate received by Cashion was $18,511.46; accordingly, that figure also represents the maximum amount ■ of disbursements she can make. Two and one-half percent of $18,511.46 is $462.79 and, when “doubled” to account for both property received and disbursements, provides a maximum allowable amount of compensation of $925.58. As mentioned, no objection was ever raised by Torbert or the other claimants concerning the reasonableness, or validity otherwise, of Cashion’s claim for compensation. Judge McKinney explained that he rejected Cashion’s claim simply because he deemed it inappropriate to award attorney fees where there had been no attorney of record during Cashion’s tenure as executrix.
Although Cashion and Torbert refer in their briefs to certain matters that were supposedly raised during the hearings before Judge McKinney, neither suggests that there ever arose an issue concerning the validity or reasonableness of the compensation sought by Cashion. Therefore, we cannot presume the sufficiency of missing evidence and speculate that Judge McKinney heard some testimony relating to the nature or reasonableness of Cash-ion’s request for compensation. That presumption will have a field of operation for other issues discussed in this opinion, but it has no application with respect to this issue.
Cashion objects to the classification of Torbert’s conservatorship-fee award as “fees and charges of administration,” stating that, although Cashion can find no Alabama caselaw on point, the conserva-torship estate was distinct from the decedent’s estate and that Torbert “presented no evidence that [her] services were reasonably necessary for the benefit of [the probate] Estate.” She argues that a review of the application for fees Torbert filed with the Montgomery circuit judge overseeing the conservatorship estate reveals that of the 95 separately itemized charges listed in the application, 57 could not relate to the probate estate, although some of the 38 other items might. However, that application is not a part of the record on this appeal. Cashion attempts to present it by attaching a copy of it as an exhibit to her brief. This Court, however, cannot consider asserted facts that are nowhere to be found in the record; therefore, we reject Cashion’s argument concerning the presence of, or lack of, evi-dentiary support for Judge McKinney’s determination that the fee award for Tor-bert’s services as conservator qualified for consideration as fees and charges of administering the probate estate. Alfa Mut. *755 Gen. Ins. Co. v. Oglesby, 711 So.2d 938 (Ala.1997); Brown v. Kingsherry Mortg. Co., 349 So.2d 564 (Ala.1977).
Under the combined effect of § 26-5-13 and -16, and § 43-2-848, Torbert was entitled to be paid from the conservatorship estate for her expenses and reasonable compensation for her services. She explained to Judge McKinney in her memorandum ' brief that she could have been paid her fees and costs out of the conser-vatorship estate at the time of Ms. Smith’s death, thereafter transferring to the initial executrix only the balance remaining, but there were no funds then available because the assets “were tied up in the marital residence and in the claim for loss of personal property with [the insurer of the residence].” Torbert further advised Judge McKinney that as soon as she discovered that letters testamentary had been issued on Ms. Smith’s estate, “she filed her Proof of Claim for her fees and costs of administration.”
As noted, Cashion states that she can find no Alabama caselaw on point and she does not cite any foreign authority in support of her argument, except a decision by an intermediate Illinois appellate court, which held only that before a claim could be classified as “an expense of administration,” it had to be shown that the charge was “reasonably necessary for the preservation and benefit of the estate.” In re Estate of Desisles, 59 Ill.App.2d 194, 201, 208 N.E.2d 122, 125 (1965). As earlier discussed, Cashion argues that there was no evidence indicating that Torbert’s services were reasonably necessary for the benefit of the probate estate and that an analysis of her application for attorney fees, which we must ignore, shows that a majority of the charges did not relate to the probate estate. Because Judge McKinney has expressly stated that, after considering “all the evidence, testimony, and briefs” presented at the February 25 hearing, he concluded that Cashion’s claim qualified as one for “the fees and charges of administration”; because in the absence of a transcript of that proceeding, we will presume that Judge McKinney had before him evidence sufficient to sustain that finding; and because of the specific focus of Cashion’s argument, we find no reversible error with respect to Judge McKinney’s classification of Torbert’s claim.
 Cashion argues that Judge McKinney erred in concluding that the $11,426.58 claim of South Haven “was for room charges and the upkeep and comfort of the ward rather than a last sickness.” She acknowledges that she can find no Alabama case on point, and she relies on several indirectly analogous cases from other jurisdictions. None of those cases, however, directly addresses this issue or is otherwise persuasive as to it. Because Torbert expressly asserted in her memorandum brief submitted to Judge McKinney that South Haven’s claim was in the nature of “room and board,” this issue is eligible for application of the presumption that sufficient evidence was submitted to warrant Judge McKinney’s holding. Although Cashion seeks to bring before us a December 28, 2000, bill from South Haven, which begins with an unexplained “balance of $15,901.42” and covers charges for November and December of that year, she does so only by way of an exhibit attached to her brief. -Not being part of the record, that billing statement is ineligible for our consideration; even if it were, there is no explanation for the “balance forward” amount or the “room charges” entries that make up the bulk .of the itemized charges. Cashion argues that South Haven’s charges should be. considered those of a “last sickness” because the petition for protective placement filed by the Montgomery County Department of Human Re *756 sources, which resulted in Torbert’s appointment as conservator, asserted that Ms. Smith was in need of 24-hour care, that she was completely incapable of attending to her medical needs, and that there was a plan to place her in a licensed nursing home facility. Those statements do not, however, exclusively establish that the services subsequently rendered by South Haven were related to Ms. Smith’s last sickness and are not otherwise sufficient to overcome Judge McKinney’s finding to the contrary, expressly stated by him to have been based upon evidence and testimony.
Issue III presented by Cashion on appeal, challenging the “preferential treatment” accorded the claims of Treasure Chest and Green is really a nonissue. We have upheld, subject to adjustment as hereinafter noted, the treatment given Torbert’s claim, and it is only out of the award to Torbert, and not out of the probate estate per se, that Treasure Chest and Green are to be paid.
Given our dispositions as to the claims of Torbert, Treasure Chest, and Green, Cashion’s issue V, concerning the striking of her objections to those claims in the circuit court, is moot. Likewise, those dispositions and our disposition of the issue of Cashion’s claim for compensation render issue VI moot.
No one has argued that the claim presented by Hamilton Funeral Home, in the amount of $1,010.85 is not due to be paid as a § 43-2-371(1) claim. Likewise no one disputes that the $414.50 court costs should be paid on a preference basis. Tor-bert’s claim, in the amount of $15,286.11 and Cashion’s claim, in the amount of $2,725.58 ($1,800 expenses plus $925.58 compensation) are due recognition as claims for fees and charges of administration under § 43-2-371(2) — fees and charges of administration of the probate estate. Those claims, prior to necessary adjustment, total $18,011.69. However, after subtraction of the claim of Hamilton Funeral Home and the court costs, there remains of the $18,511.46 originally available for payment of claims, only $17,086.11. Section 43-2-700, Ala.Code 1975, requires that the Torbert and Cash-ion claims, be paid “in proportion to the amounts due to each class of creditors, in the order in [§ 43-2-371] specified.” Because the money available for payment for Torbert’s and Cashion’s claims can satisfy only 94.86 percent of the total of those claims, each claim must be reduced 5.14 percent. Accordingly, Torbert must be paid 94.86 percent of her claim, or the amount of $14,500.59, and Cashion must be paid 94.86 percent of her claim, or the amount of $2,585.52. Because Torbert has filed no cross-appeal in this case, being apparently satisfied with the responsibility imposed upon her by Judge McKinney of paying the claims of Treasure Chest and Green out of her claim, we need not separately address those two claims. As to the claims of American Pharmaceutical Services and Alabama Gas Company, which Judge McKinney took no note of in his order on final settlement, thereby rejecting them, they would clearly be § 43-2-371(6) claims and there will be no funds remaining for payment of any claims made pursuant to § 43-2-371(6).
Accordingly, we hereby affirm the circuit court’s judgment in part, and reverse it in part, and we remand the cause for the Montgomery Circuit Court to reverse the probate court’s judgment and remand the cause to the Montgomery Probate Court for the entry of an order consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
*757 HOUSTON, LYONS, BROWN, JOHNSTONE, WOODALL, and STUART, JJ., concur.
SEE, J., concurs in the result.

. The record clearly reflects that this request was filed on April 12, 2002.