BOLIN, Justice
(concurring in part and dissenting in part as to the rationale and concurring in the result).
The probate judge in this case entered an order denying the petition for expert- *1008 witness fees filed by AltaPointe Health Systems, Inc. (“AHS”), under § 22-52-14, Ala.Code 1975, based on his findings that the fees were “improper” and not “allowable” under the statute. Specifically, the probate court determined that “AHS is not actually incurring the fees for which it is seeking payment,” because “AHS is not employing outside experts and thus is not incurring any expert fees or expenses.” The probate court further stated that “the time spent by a medical expert witness, both preparing to testify and actually testifying in court, must be considered a part of the overall evaluation services provided by AHS in involuntary mental commitment cases.” The main opinion reverses the probate court’s order, based on its interpretation of § 22-52-14, Ala.Code 1975, applying a de novo standard of review. Specifically, the main opinion interprets § 22-52-14 as mandating the payment of a reasonable fee for any expert qualified to testify in a commitment proceeding.
Section 22-52-14 provides:
“In any commitment proceeding, the fees of any attorney appointed by the probate judge to act as advocate for the petition and any attorney or guardian ad litem appointed by the probate judge for the person sought to be committed shall be set at the rates established by Section 15-12-21; and any expert employed to offer expert testimony, in such amounts as found to be reasonable by the probate judge.... ”
(Emphasis added.)
Section § 22-52-14, regarding payment of fees to be taxed as costs in involuntary-commitment proceedings, is unambiguous in establishing that the probate judge appoints attorneys to act as advocates and attorneys or guardians ad litem for the respondent and that their fees are set by statute, while the fees awarded to unappointed expert witnesses “employed,” or, put another way, “used,” to offer expert testimony are determined by the probate court, not by statute, in such amounts as found to be reasonable by the court. Hence, I submit that the proper standard of appellate review of the probate court’s order in this proceeding should be guided by whether the probate judge exceeded his or her discretion, and therefore not subject to the interpretation and analysis of the statute embodied in the main opinion.
The key phrase of the statute, i.e., “found to be reasonable,” clearly vests the probate court with the discretion to fix and determine the appropriate expert-witness fee under the statute, subject only to correction if the probate court exceeds its discretion. The reasonableness of an expert-witness fee to be paid is a matter within the discretion of the probate court and its decision on such matter will not be reversed on appeal unless the court exceeds that discretion.[8] Cf., by analogy to counsel fees, Lanier v. Moore-Handley, Inc., 575 So.2d 83, 85 (Ala.1991) (“The reasonableness of an attorney fee under a contract providing for the recovery of reasonable attorney fees is largely within the discretion of the trial court.”); see also Commercial Standard Ins. Co. v. New Amsterdam Cas. Co., 272 Ala. 357, 362, 131 So.2d 182, 186 (1961) (“The matter of fixing the fee rests largely within the discretion of the trial court, subject only to correction for abuse of discretion.”). The probate court in this case was not inter *1009 preting the statute, and neither is it necessary for this Court to do so to properly review the probate court’s decision. Rather, this Court should be reviewing whether the probate court exceeded its discretion in declining to award any fee because the expert qualified to testify in this case was an employee of AHS, a publicly funded mental-health agency.
As stated, the first part of § 22-52-14 applies to the payment of court-appointed attorney/advocates and court-appointed attorneys or guardians ad litem for the respondent. These attorneys, pursuant to the statute, are paid fees in amounts set by a fixed standard in § 15-12-21, Ala.Code 1975. The second part of § 22-52-14 specifically provides for the payment of expert-witness fees and provides that such fees are to be set “in such amounts as found to be reasonable.” Although the first part of § 22-52-14 empowers the probate court to “appoint” the necessary attorneys or guardians for the proceedings, the second part of the statute simply refers to any expert “employed” to offer expert testimony. In this case, AHS “designate[d]” or provided the expert-witness testimony to be given to the probate court during the “merits” hearing. Because the expert witness in this case was not appointed by the court, the use of the term “employed” in the statute must be given its plain meaning. Words in a statute must be given their natural, ordinary, commonly understood meaning. Ex parte Weaver, 871 So.2d 820 (Ala.2003). In the context of this statute, the word “employ[ed]” is defined by Black’s Law Dictionary 586 (8th ed. 2006) as “[t]o make use of’ or “to hire.” See also American Heritage Dictionary of the English Language 428 (New College ed. 1976) defining “employ[ed]” as “[t]o engage the services of.”
The probate court declined to award any fee whatsoever to AHS based on the court’s findings (1) that AHS was not employing a non-employee outside expert witness to testify and was, therefore, not incurring any fees for which it was seeking payment; (2) that the expert witness designated by AHS to testify was a salaried AHS employee, who does not individually bill either AHS or the court for her time spent testifying; and (3) that the time spent by the expert witness, both preparing to testify and actually testifying in court, must be considered a part of the overall evaluation services provided by AHS. Applying the exceeding-its-diseretion standard as I submit that we should, I conclude that the probate court exceeded its discretion in denying AHS’s requested fees under the facts in this case. First, the fact that the expert witness in this case was employed by AHS is no different than a private psychiatrist who testifies as an expert witness being employed by a professional practice group, whereby the entity requesting an expert fee might well be the psychiatrist’s employer. Indeed, AHS pays the salary of its designated expert witness from its own budget, and the record reflects that it is not reimbursed for that expenditure by any outside funding source. Second, I do not agree that the expert testimony in this case must be considered as part of the overall evaluation services provided by AHS. A respondent in an involuntary-commitment proceeding is “evaluated” to determine whether a mental illness exists and, if so, the respondent’s diagnosis. A respondent then receives “treatment” for the particular diagnosis. These functions are obviously carried out by a hospital or mental-health facility outside the court’s presence. At the hearing before the court, however, there must be “expert testimony” to convince the probate court as to whether a serious mental illness is present, and whether the respondent should be ordered committed on either an *1010 inpatient or outpatient basis. According to AHS, “expert witness services” refer to “the activities of planning and preparing to testify, and actually testifying during civil commitment hearings.” In this case, AHS’s designated expert sometimes spends “forty (40) hours per week preparing to, and actually testifying in, the hearings before the Probate Court.” AHS is not seeking reimbursement by way of costs from the State General Fund for the “evaluation and treatment” of consumers in involuntary-commitment proceedings. Rather, it is seeking reimbursement solely for the expert testimony of its employees that it provides to the probate court in those proceedings. Regardless of whether AHS employs a paid outside expert to provide such testimony or whether it makes use of, or engages the services of, its own in-house expert to provide the testimony, AHS is still providing an invaluable service by way of expert testimony to the probate court, for which it should be entitled to reasonable compensation.[9] Arguably, AHS might not have need for this particular employee in its employ if not for her role in providing expert testimony and would therefore not have an expenditure for her salary. But, as here, where AHS does pay an employee to provide this service, and the service is received by the probate court, AHS should be entitled to an award of a reimbursed expert-witness fee in a reasonable amount set by the probate court. Because I conclude that the probate court exceeded its discretion in denying AHS’s requested expert-witness fees, I concur with the main opinion that AHS is entitled to reasonable compensation under the statute for those fees.
However, I respectfully disagree with any implication in the main opinion that an expert-witness fee must be paid to any qualified expert giving testimony in all possible circumstances. In the event a probate judge deems a witness qualified to testify, there still may be circumstances in which the judge declines to award a fee for that testimony. The probate court in this case acknowledged that AHS’s designated witness was qualified to testify and that she provided valuable testimony; however, *1011 that may not always be the case. For instance, what would happen in the event multiple family members or friends of a respondent each provided a different expert to give testimony to the court; in such event, must the probate judge pay an expert fee to each expert qualified by the court, even if their testimony was cumulative? Further, should an occasion arise in which a witness qualified to testify as an expert, or that witnesses’s employer, was found to receive funding for giving expert testimony from an additional source, must that witness be paid again as part of the costs of court? The clear answer to each example is in the negative based on a probate court’s proper exercise of discretion as given to it in § 22-52-14, not as a matter of law as the main opinion concludes.
There are 67 probate courts and 68 probate judges in the State of Alabama presiding over involuntary-civil-commitment proceedings. The facilities and resources available to provide medical help and assistance to persons with a serious mental illness vary greatly from county to county. Some urban counties have multiple hospitals, psychiatrists, and resources to treat mental illness, while some rural counties must make do with little or limited resources. Still, the legislature was tasked with enacting a statute regarding the payment of expert-witness costs in those proceedings that would be workable and fair in all the probate courts in Alabama. The legislature answered this calling by vesting the probate courts with the discretion to fix and determine “reasonable” compensation in this area, and, accordingly, a valid exercise of that discretion under different facts than we have herein might well be that no fee is due to be awarded. For this reason probate judges have the latitude, or put another way — the discretion given to them under the statute — to determine, on a case-by-case and witness-by-witness basis, whether a fee should be awarded and taxed as costs to a qualified expert, or to an expert’s employer, and, if so, the reasonableness of that fee.
MAIN, WISE, and BRYAN, JJ„ concur.

. "This Court has for several years been using the phrase 'exceeded its discretion’ rather than the phrase 'abused its discretion.’ The word 'abused' has a negative connotation this Court does not believe is useful in describing file judicial acts of our trial court judges, thus prompting us to use the word 'exceeded.' The standard of review remains the same.” State v. Isbell, 985 So.2d 446, 453 n. 3 (Ala.2007).

. By virtue of the nature of involuntary-commitment proceedings and the required statutory findings, should relief be granted, i.e., if the probate court orders outpatient or inpatient treatment pursuant to §§ 22-52-10.2 and 22-52-10.4, Ala.Code 1975, it is difficult to conceive of a factual basis sufficient for a probate court to order either such relief without the receipt of expert testimony.
Section 22-52-10.2, Ala.Code 1975, provides:
"A respondent may be committed to outpatient treatment if the probate court finds, based upon clear and convincing evidence that: (i) the respondent is mentally ill; (ii) as a result of the mental illness the respondent will, if not treated, continue to suffer mental distress and will continue to experience deterioration of the ability to function independently; and (iii) the respondent is unable to make a rational and informed decision as to whether or not treatment for mental illness would be desirable.”
(Emphasis added.) Section 22-52-10.4(a), Ala.Code 1975, provides:
"(a) A respondent may be committed to inpatient treatment if the probate court finds, based upon clear and convincing evidence that: (i) the respondent is mentally ill; (ii) as a result of the mental illness the respondent poses a real and present threat of substantial harm to self and/or others; (iii) the respondent will, if not treated, continue to suffer mental distress and will continue to experience deterioration of the ability to function independently; and (iv) the respondent is unable to make a rational and informed decision as to whether or not treatment for mental illness would be desirable."
(Emphasis added.) It would difficult, and seemingly impossible, for a probate court to order any relief to a petitioner pursuant to the elements of the statutes above without expert testimony.